UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAWRENCE BLAIR,

                Petitioner,

    -vs-

CLINTON CORRECTIONAL FACILITY,

                Respondent.
_____

**DECISION AND ORDER**
**No. 02-CV-0595(VEB)**

## I.    Introduction

Petitioner Lawrence Blair ("Blair" or "petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Court on one count of second degree burglary (N.Y. Penal Law § 140.25(2)). The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c)(1).

## II.    Factual Background and Procedural History

On April 10, 1998, Joseph Meggo ("Meggo"), an inspector with the United States Customs and Immigration Service, returned from work at about 2:30 a.m. to his residence at 86 Bidwell Parkway in the City of Buffalo. In the front yard were two garbage bags containing dry goods and boxes of unused garbage bags. *See* T.33-35.[1] Meggo picked up the two bags and brought them inside the house. He returned outside to take out the garbage and, as he was walking down the driveway between his residence and the house next door (82 Bidwell Street), Meggo observed a number of cardboard boxes lined up against his house. T.36-37. He found that

---

[1]    Citations to "T.__" refer to the trial transcript.

they contained dry goods and canned goods, as well as Christmas decorations and Christmas-tree stand. T.37, 45. Meggo then observed that basement window on the house next door, which happened to be owned by his father-in-law, Richard Dee ("Dee"), was propped open and a light was coming from inside the cellar. T.37-38.

Meggo called Dee from his cellular telephone and asked him to come outside; the two men then proceeded to the cellar of Dee's house. T.40. Meggo observed that the light in the basement was coming from a freezer which had been left open. T.40-41. Meggo and Dee searched the basement and were about to leave when Dee pointed out what appeared to be more than just an ordinary pile of laundry near the washing machine and dryer. T.42, 57. Meggo could tell that it was a person crouching down since he could see the beltloops of the person's pants. T.43. Drawing his service handgun, Meggo approached the pile of clothes and kicked it. T.42. The sheet flew off, revealing a man whom Meggo later identified as Blair. T.43. Meggo handcuffed him and Dee called the police. T.43-44.  Dee later identified the property found in the boxes outside the house as belonging to him. T.61-62.

When Officer James Hacker ("Hacker") of the Buffalo Police Department responded to the 911 call, he observed Blair being escorted down the driveway in handcuffs. T.79-80. Hacker administered the *Miranda* warnings to Blair; Blair indicated that he understood his rights. T.79-81. Lieutenant Lewis Ferrentino ("Ferrentino") observed Hacker read Blair the *Miranda* warnings and he then asked Blair some questions. T.91. According to Ferrentino, Blair stated that he was staying at 1129 West, about a mile away from 82 Bidwell, the scene of the burglary. T.91. Blair stated that he did not have a car and was going to keep the property at 82 Bidwell and carry it until he got it all out. T.92. Hacker and Ferrentino admitted that he did not see any sign of

forced entry. T.85, 94. No burglary tools were discovered at the crime scene. T.94.

Officer Armond Cardone ("Cardone"), along with his partner, Officer Johnnie Allessandro ("Allessandro") transported Blair to the police station following his arrest. T.72. While they were processing the paperwork in Blair's presence, Cardone asked Allessandro if he remembered seeing whether the basement window had been broken. T.73. Blair said, "I didn't break no basement window." T.73. Cardone then asked Blair if he had used the tree branch that was near the window to pry open the window. T.73. According to Cardone, Blair responded, "No," and explained that the basement window was unlocked and that he had used the stick to hold the window open while he moved the boxes out. T.74.

Following the close of the proofs, defense counsel moved for a direct verdict, arguing that the prosecution failed to make a *prima facie* case of burglary under Penal Law § 140.25. In particular, defense counsel argued, there was inadequate proof that petitioner intended to steal once he was inside the dwelling. T.97. The prosecutor argued that the circumstances of the incident and petitioner's statements at the time of his arrest were sufficient to show that Blair had the requisite intent to commit a crime. T.98. The trial court denied the defense application. T.98.

Defense counsel also requested a jury instruction on the lesser included offense of criminal trespass in the second degree, a misdemeanor. T.99. The offense of criminal trespass encompassed petitioner's unlawfully remaining in a dwelling; counsel argued that the facts of the cases showed that Blair "wasn't trying to conceal anything" and therefore a reasonable view of the evidence was that he did not have the intent to steal the property in the boxes found outside. T.101-03. The trial judge denied the request to charge-down to criminal trespass, noting that he did "not see any reasonable view of the facts that would indicate that this was merely an intent to

find a place to sleep or the purpose to go in was to borrow some food." T.105.

The jury returned a verdict convicting Blair as charged of second degree burglary. T.144-45. The prosecution moved to have Blair sentenced as a persistent violent felony offender based on a 1980 second degree burglary conviction, a 1985 conviction for attempted second degree burglary, and a 1990 conviction for second degree assault. S.2.[2]  Defense counsel indicated that he had spoken with his client at length and that Blair did not controvert any of the allegations in the predicate felony statement. S.5. Blair stated on the record that counsel was correct. S.5. Blair was sentenced to an indeterminate term of imprisonment of sixteen years to life, the minimum sentence possible given his persistent violent felony offender status.

On direct appeal, appellate counsel raised one issue–that the verdict was against the weight of the evidence. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed in the conviction in a summary order. *People v. Blair*, 285 A.D.2d 997 (App. Div. 4th Dept. 2001). The New York Court of Appeals denied Blair's *pro se* application for leave to appeal. *People v. Blair*, 97 N.Y.2d 639 (N.Y. 2001). Blair, proceeding *pro se*, filed an application for a writ of error *coram nobis* raising three points: that the prosecution failed to prove beyond a reasonable doubt that petitioner had the requisite criminal intent to support the burglary conviction; that appellate counsel had been ineffective in failing to argue that the trial court erred in failing to charge the jury with the lesser included offense of criminal trespass in the second degree; and that the trial court failed to ask petitioner whether he wished to challenge the constitutionality of the prior convictions used to support the prosecutor's persistent violent felony offender application. *See* Petitioner's Application for a Writ of Error

---

[2]    Citations to "S.__" refer to the transcript of the sentencing hearing held on December 15, 1998.

*Coram Nobis*, Respondent's Exhibit ("Resp't Ex.") D. The Appellate Division summarily denied

the application. *See* Resp't Ex. D; *see also People v. Blair*, 2002 N.Y. Slip. Op. 05744, 745

N.Y.S.2d 737 (App. Div. 4th Dept. 2002).

This habeas petition followed on August 9, 2002. Blair asserts the following grounds for

relief: (1) the prosecution violated its disclosure obligations under *Brady v. Maryland*, 373 U.S.

83 (1963); (2) appellate counsel failed to provide effective assistance; and (3) the conviction was

obtained in violation of the Fifth Amendment's Double Jeopardy Clause. *See* Petition ("Pet.")

(Dkt. #1). Respondent has opposed the petition arguing that Blair has failed to name as a party

the person having custody over him, in violation of 28 U.S.C. § 2242 ("An application for a writ

of habeas corpus "shall allege the facts concerning the application's commitment or detention,

the name of the person who has custody over him . . . ."). *See* Respondent's Memorandum of

Law ("Resp't Mem.") at 5 (Dkt. #4).  Given that petitioner is incarcerated in the Clinton

Correctional Facility, the correct respondent therefore would be the Superintendent of the Clinton

Correctional Facility. This defect can be cured, however, by a mere amendment to the petition's

caption. *DeSousa v. Abrams*, 467 F. Supp. 511, 513 (E.D.N.Y. 1979) (citing *Ashley v. State of

Washington*, 394 F.2d 125, 126 n. 1 (9th Cir. 1968)). There is no point in dismissing this petition

for Blair's failure to name the proper party as respondent. *Accord  DeSousa*, 467 F. Supp. at 513

(citing *Britt v. McKenney*, 529 F.2d 44, 46 (1st Cir. 1976); *United States ex rel. Gauthreaux v.

State of Illinois Pardon and Parole Board*, 447 F. Supp. 600, 602 (N.D. Ill. 1978)). In light of

petitioner's *pro se* status and the fact that this amendment in no way will prejudice respondent,

and in the interests of court efficiency, the Court will deem the petition amended to change the

name of respondent to the Superintendent of the Clinton Correctional Facility.

Respondent also argues that Blair's *Brady* claim and Double Jeopardy claim are unexhausted as they have never been raised in any state court forum. *See* Resp't Mem. at 6-7; 28 U.S.C. § 2254(b)(1). Respondent contends that "[t]he Appellate Division was available to petitioner for corrective process" and therefore petitioner still has available remedies in state court to exhaust these claims. Resp't Mem. at 6-7 (Dkt. #4). Respondent urges the Court to dismiss the petition as a "mixed petition." *See id.* In the alternative, respondent argues that the petition should be dismissed because all three of Blair's claims lack merit.

## III.   Discussion

### A.    Exhaustion

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that a habeas petitioner must give the state courts a "full and fair opportunity" to review the merits of his federal claims "by invoking one complete round of the State's established appellate review process"); *see also Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)). For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke*, 933 F.2d at 120 (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); citations omitted). A petitioner facing such circumstances no longer has "remedies

available in the courts of the State" within the meaning of 28 U.S.C. § 2254(b). *Id.* (citing 28 U.S.C. § 2254(c)). In the present case, Blair has utilized the one direct appeal to the Appellate Division to which he is entitled under New York State law. *See* N.Y. Court Rules 500.10(a). Therefore, he is procedurally barred from attempting to raise his *Brady* and Double Jeopardy claims before the New York Court of Appeals. Petitioner cannot again seek leave to appeal these claims in the Court of Appeals because he has already made the one request for leave to which he is entitled. Although he could raise them in a collateral motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, the state court would be required to deny them as procedurally barred pursuant to C.P.L. § 440.10(2)(c) because the claims, being record-based, could have been raised on direct appeal. N.Y. Crim. Proc. Law § 440.10(2)(c); *see also Grey v. Hoke*, 933 F.2d at 120-21. Under these circumstances, then, "[n]o purpose would be served by requiring petitioner to return to state court for further proceedings before considering any of the claims raised in his habeas petition." *Id.* at 121 (citation omitted). Because Blair no longer has "remedies available" in the New York state courts under 28 U.S.C. § 2254(b), he has met the statutory exhaustion requirements for presenting a habeas petition to the federal courts. *Id.*

However, Blair's forfeiture in state court of his *Brady* and Double Jeopardy claims bars him from litigating the merits of those claims in this federal habeas proceeding, absent a showing of cause for the procedural default and prejudice resulting therefrom. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87-91 (1977)). Blair has made no showing of cause or of prejudice, and none is discernible on the record before the Court. Accordingly, the claims must therefore be dismissed without reaching the merits. *Id.*

In any event, even if the Court were to reach the merits of the *Brady* and Double Jeopardy

claims, it would deny them as without merit. As to the *Brady* claim, Blair asserts that his

conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence

favorable to the defense. *See* Pet. ¶12(A) (Dkt. #1). Blair's supporting allegations are as follows:

"There was no physical evidence and no Burglary tools and no weapons. It was never shown in

court of any of the above matters. I was sleeping under a sheet when they found me in the

basement. Window of basement was not broken." *Id.* (Dkt. #1). Although Blair has styled this

claim as a *Brady* issue, it is apparent that his argument actually goes to the legal sufficiency of

the evidence to support the burglary conviction.[3]

     In order to establish Blair's guilt of the crime of second degree burglary, the prosecution

was required to prove that the defendant "knowingly enter[ed] or remain[ed] unlawfully in a

building with intent to commit a crime therein," and that the building in question was a dwelling.

N.Y. Penal Law § 140.25(2). There is no question that Blair was not lawfully within the house at

82 Bidwell Parkway. Furthermore, as respondent argues, there was legally sufficient evidence

from which a rational jury could have inferred that Blair intended to commit a crime once inside

the dwelling: the window through which Blair entered the cellar of the house was propped open,

and boxes of dry goods, canned food, a Christmas tree stand and Christmas decorations were

staged on the ground outside the house. Blair was found hiding, not sleeping, under a pile of

laundry on the basement floor, and he admitted to the police that he used a stick to prop open the

basement window while he was carrying the items out of the house. Contrary to Blair's

contention, it was unnecessary for the prosecution to prove that the window had been broken or

---

[3]    As respondent notes, Blair does not state in the Petition or in any of his other pleadings what *Brady* material allegedly was withheld. The Court has reviewed the record in its entirety and can find no indication that any allegedly favorable evidence was not disclosed.

that burglar's tools or weapons were used by petitioner in the commission of the burglary. This

claim does not warrant habeas relief under any standard of review.

The Court turns next to Blair's other "deemed exhausted" claim, which he has

denominated as a violation of the Double Jeopardy Clause, stating that his conviction was

"obtained by a violation of the prosecution against double jeopardy." Pet. ¶12(C) (Dkt. #1). In

support of this claim for habeas relief, Blair makes the followings allegations:

> Failure of the court to show jury evidence of items from 82 Bidwell St. . . . The
> prosecution did not prove to jury the items taken from 82 Bidwell St. . . .
> Prosecution did not take jury to 82 Bidwell to show them the house and the
> basement window of that house at me and my lawyer's request, off the record.

*Id.* (Dkt. #1). As respondent points out, Blair's allegations have nothing to do with the Fifth

Amendment's Double Jeopardy Clause.[4] Furthermore, the complainant testified credibly and

without impeachment that the items found on the ground outside his house at 82 Bidwell Street

were, in fact, his property. *See* T.61-62. The prosecution was not required to produce these items

in court in order to sufficiently prove its case against Blair. Blair's allegations in support of this

third claim in his Petition do not warrant habeas relief under any standard of review.

### B.      Merits of Petitioner's Exhausted Claim of Ineffective Assistance of Appellate Counsel

As his second ground for habeas relief, Blair contends that he was "[d]enied of [sic]

effective appellate counsel." Pet. ¶12(B) (Dkt. #1). To prevail on an ineffective assistance of

counsel claim, petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466

---

[4]          "The Fifth Amendment guarantee against double jeopardy . . . has been said to consist of three
separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It
protects against a second prosecution for the same offense after conviction. And it protects against multiple
punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted); *accord*,
*e.g.*, *United States v. Pettus*, 303 F.3d 480, 486-87 (2d Cir. 2002).

U.S. 668 (1984). First, the petitioner must demonstrate that his "counsel's representation fell

below an objective standard of reasonableness." *Id.* at 687-88. Second, he must show that

counsel's deficient performance prejudiced his defense. *Id.* at 692. To demonstrate prejudice,

petitioner must prove that, but for counsel's errors, there is a reasonable probability that the

outcome of the proceeding would have been different. *Id.* at 694. Failure to satisfy either

requirement of *Strickland*'s test is fatal to a claim of ineffective assistance. *See id.* at 696 (

"[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both

components of the inquiry if the defendant makes an insufficient showing on one." ).

 Although *Strickland*'s two-pronged test was originally formulated to judge trial counsel's

performance, it applies in the context of evaluating the effectiveness of appellate counsel's

representation as well.  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). To establish that

appellate counsel failed to render effective assistance, a petitioner must do more than simply

demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not

required to raise all potentially colorable arguments. *Id.* (citing *Jones v. Barnes*, 463 U.S. 745,

754 (1983)). Failure to raise an argument on appeal constitutes ineffective assistance only when

the omitted issue is clearly stronger and more significant than those presented. *See id.* (citing

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To establish the requisite level of prejudice

resulting from appellate counsel's shortcomings, a petitioner must establish that there is a

reasonable probability that the omitted "claim would have been successful before the [state's

highest court]." *Id.* (quoting *Claudio v. Scully*, 982 F.2d 798, 803-05 (2d Cir. 1992)).

 Here, Blair makes the following assertions in support of his claim that appellate counsel

submitted a deficient brief on appeal:

> Appellate lawyer failure [sic] to include nine (9) points that I told him to use when
> I sent him back questionnaire, including the most important point of criminal
> trespass as the lesser included charge which was denied by trial judge in judge's
> chambers on record. He has screwed up my appeal on purpose.

Pet., ¶12(B) (Dkt. #1). Blair does not provide any further information as to the other eight

arguments that he believes appellate counsel erroneously omitted, making it impossible for this

Court to evaluate that aspect of his claim. With respect to the omitted argument that Blair does

identify, the Court cannot find that appellate counsel was professionally unreasonable in

declining to include an argument concerning the trial court's refusal to charge second degree

criminal trespass as a lesser included offense of second degree burglary on Blair's direct appeal,

or that Blair was prejudiced by the omission.

Under New York law, a defendant is entitled to jury instruction on a lesser included

offense only where there is a reasonable view of the evidence supporting a finding that the

defendant committed the lesser offense but did not also commit the greater. *See* N.Y. Crim. Proc.

Law § 300.50(1); *People v. Henderson*, 41 N.Y.2d 233, 234-35 (N.Y. 1976). A person is guilty

of criminal trespass in the second degree when he knowingly enters or remains unlawfully in a

dwelling. N.Y. Penal Law § 140.15. A person commits second degree burglary when he

knowingly enters or remains unlawfully in a dwelling with the intent to commit a crime therein.

N.Y. Penal Law § 140.25(2). In considering the issue of whether on any reasonable view of the

evidence it was possible for the trier of facts to acquit Blair on the higher count of second degree

burglary and still find him guilty on the lesser one of second criminal trespass, the trial court was

required to view the evidence in the light most favorable to the defense. *See Henderson*, 41

N.Y.2d at 234-35; *see also People v. Shuman*, 37 N.Y.2d 302, 304-05 (N.Y. 1975). Even

viewing the evidence in the light most favorable to the defense, this Court cannot say that the trial court erred in finding that there was no reasonable view of the evidence on which the jury could acquit Blair of burglary but still find him guilty of criminal trespass. To do so, the jury would have had to disregard the uncontroverted evidence that Blair intended to commit a crime while unlawfully inside the dwelling–namely, the proof that boxes of canned food and dry goods and Christmas decorations belonging to the homeowner had been removed from the house and left lying on the ground outside. On the record evidence in Blair's case, there was "no identifiable, rational basis on which the jury could have rejected a portion of the prosecution's case indispensable to establishing the higher crime and yet have accepted so much of the proof as would have established the lesser crime[.]" *People v. Avery*, 106 A.D.2d 855, 483 N.Y.S.2d 506, 507 (App. Div. 4th Dept. 2001) (citing *People v. Scarborough*, 49 N.Y.2d 364, 369-370 (N.Y. 1980)). Therefore, the trial court did not err as a matter of state law in declining to give the requested charge.

Appellate counsel did not act unreasonably in choosing not to pursue this claim, which had little to no chance of success on appeal. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the '"wide range of professionally competent assistance"' to which Petitioner was entitled.") (quoting *Jameson v. Coughlin*, 22 F.3d 427, 429-30 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690) (footnote omitted)). Moreover, the Court cannot find that Blair's appeal was prejudiced, since there is no reasonable probability that had appellate counsel included this non-meritorious issue, the result would have been the reversal of his conviction. Blair's claim that appellate counsel failed to provide effective assistance does not warrant habeas relief under any standard of review.

**IV.     Conclusion**

For the foregoing reasons, petitioner Lawrence Blair's petition for a writ of habeas corpus is denied. Because the Court finds that Blair has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2).

In addition, for the reasons discussed above, the Clerk of the Court is directed to terminate Clinton Correctional Facility as respondent, add Superintendent of Clinton Correctional Facility as the new respondent, and revise the caption of this action accordingly.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: August 3, 2007
        Buffalo, New York.